UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

LAWRENCE LA SPINA,

                    Plaintiff,

        - against -

                                            21-cv-1556 (JGK)
UNITED STATES ATTORNEY'S OFFICE,
FINANCIAL LITIGATION OFFICE,                ORDER

                    Defendant.
_____

JOHN G. KOELTL, District Judge:

      Because the defendant moved in the alternative for summary

judgment, the defendant should provide the plaintiff with a copy

of Local Rule 56.2, as well as a copy of Local Rule 56.1, by

**April 15, 2022.** By **April 15, 2022,** the defendant should also

brief the following issues: (1) What is the basis for subject

matter jurisdiction in this case, and is the United States

Attorney's Office a proper defendant? Is there jurisdiction

under the Federal Tort Claims Act or the Administrative

Procedure Act? Should the plaintiff's complaint be brought as a

motion in the criminal case? (2) Did the restitution order's

installment plan expire upon the completion of Mr. La Spina's

supervised release term? (3) Can Mr. La Spina be said to be

"delinquent" on his restitution payments, such that his alleged

debt can be referred to the Treasury Offset Program ("TOP"), if

he was facially complying with the terms of the installment

1

plan? See United States v. Taylor, No. 06-cr-658-03, 2021 WL
3051901 (E.D. Pa. July 20, 2021) (finding that the Government
exceeded its authority and violated the court's restitution
order when it offset the defendant's Social Security benefits
through TOP where the defendant was complying with the terms of
the restitution order); United States v. Hughes, 813 F.3d 1007,
1010-11 (D.C. Cir. 2016) (finding that the use of TOP to offset
the defendant's tax refunds was improper because the defendant
was complying with the terms of the restitution order, and her
restitution obligation was therefore not delinquent); see also
United States v. Martinez, 812 F.3d 1200, 1205 (10th Cir. 2015)
(finding, in context of garnishment proceeding, that "an
installment-based restitution order does not render the total
restitution amount due immediately," and, therefore, "a
defendant subject to an installment-based restitution order need
only make payments at the intervals and in the amounts specified
by the order"); United States v. Hughes, 914 F.3d 947, 949 (5th
Cir. 2019), as revised (Feb. 1, 2019), as revised (Feb. 14,
2019) ("When a restitution order specifies an installment plan,
unless there is language directing that the funds are also
immediately due, the government cannot attempt to enforce the
judgment beyond its plain terms absent a modification of the
restitution order or default on the payment plan."). But see
Stacy v. United States, No. 19-cr-01, 2022 WL 832603 (N.D. Ill.

2

Mar. 21, 2022) (rejecting challenge to administrative offset even though the criminal defendant appeared to be complying with the installment plan contained in his restitution order); United States v. Weissenbach, No. 3:08-cr-172-1, 2010 WL 2246177, at *2 (W.D.N.C. June 2, 2010) ("TOP offsets are not part of any court payment schedule, but are instead part of the government's collection activities. There is no statute that prohibits the United States from conducting such collection activity once the restitution order is imposed, even where there is no payment default or where the Court has established a payment schedule."); Greene v. United States, 124 Fed. Cl. 636, 644 (2015) ("[T]he establishment of a payment schedule does not preclude the government from undertaking collection activity, such as referral of a debt to the TOP for offset.").

The plaintiff may file any additional evidentiary materials, a response to the defendant's Rule 56.1 Statement, and a response to the defendant's additional briefing, by **April 29, 2022**. The defendant may thereafter reply by **May 6, 2022**. The defendant's motion to dismiss the plaintiff's complaint, and in the alternative for summary judgment, will then be fully briefed.

The Clerk's Office is directed to mail a copy of this Order, along with its attachments, to the plaintiff's last known address and to note service on the docket sheet.

SO ORDERED.

Dated: April 7, 2022
       New York, New York

John G. Koeltl
United States District Judge

United States v. Taylor, Slip Copy (2021)

128 A.F.T.R.2d 2021-5280

2021 WL 3051901
United States District Court, E.D. Pennsylvania.

UNITED STATES of America
v.
Constance TAYLOR

CRIMINAL ACTION 06-658-03
|
Filed 07/20/2021

**Attorneys and Law Firms**

Vineet Gauri, Ara B. Gershengorn, U.S. Attorney's Office, Stephen Aaron Miller, Hausfeld LLP, Philadelphia, PA, for USA.

**MEMORANDUM**

Anita B. Brody, District Judge

**\*1** The court has the sole statutory authority to determine the amount of restitution, the schedule of payments, and whether to modify that schedule of payments based on changed economic circumstances of the defendant. The government only has the authority to enforce the terms of the court's restitution order.

After consideration of Taylor's economic circumstances—a statutory requirement—this Court ordered Taylor to pay $100 per year towards her restitution judgment of $3,300,000. Despite Taylor's compliance with the Court's restitution order, the government began deducting fifteen percent of Taylor's Social Security benefits to apply to her restitution judgment. Taylor objects to the offset of her benefits and moves for relief from the government's actions to collect restitution.[1] Because the government exceeded its authority and violated the Court's restitution order when it offset Taylor's benefits, I will grant Taylor's motion for relief.[2]

[1] Taylor initially filed a pro se letter motion. See ECF No. 1076. On March 22, 2021, the Court appointed Peter D. Hardy, Esq. to represent Taylor in this matter and to provide supplemental briefing. See ECF No. 1084.

2

Taylor also moves for the Government to provide her with an accounting of her joint and several restitution obligation. The Government agrees to provide Taylor with an accounting of restitution currently owed, but it requests at least 120 days to allow the IRS to verify all payments that it has received that are related to Taylor's joint and several restitution obligation. Gov't Resp. 5. Because the Government has now been on notice of Taylor's request for several months, the Court will order the Government to provide Taylor with an accounting of restitution currently owed within approximately 90 days from the date of the order granting her motion.

**I. BACKGROUND**

On April 24, 2007, a grand jury charged several individuals, including Taylor, with conspiracy to defraud the Internal Revenue Service ("IRS"), as well as corruptly endeavoring to obstruct the administration of the tax laws. These charges stemmed from each individual's involvement in an organization known as the Commonwealth Trust Company ("CTC"), a company that sold domestic and foreign trusts. CTC advised clients that they could escape paying federal income tax by diverting their income through CTC trusts, and instructed clients to transfer assets they already had into these trusts to protect the assets from IRS liens and seizures.

On January 28, 2008, a jury found Taylor guilty of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and two counts of corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws, in violation of 18 U.S.C. § 7212(a). The Court sentenced Taylor to 90 months of imprisonment, three years of supervised release, a $300 special assessment, and restitution in the amount of $3,300,000 to the Internal Revenue Service. The Court ruled that Taylor's restitution obligation was joint and several with her co-defendants.

**\*2** Taylor appealed her conviction and sentence. On November 15, 2011, the Third Circuit affirmed Taylor's conviction and sentence, but vacated the award of restitution entered against her with the following explanation:

Under the Mandatory Victims Restitution Act, (MVRA), "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately unless ... the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1).

This statute also mandates that the sentencing order include a payment schedule in consideration of the defendant's economic circumstances. *See* 18 U.S.C. § 3664(f)(2), *see also,* ⬛ *United States v. Coates*, 178 F.3d 681, 684 (3d Cir. 1999). Failure to do so constitutes plain error. ⬛ *United States v. Corley*, 500 F.3d 210, 227 (3d Cir. 2007).

Here, as the Government concedes and Appellant[ ] ... Taylor point[s] out, the District Court ordered restitution in the amount of ... $3,300,000.00 from Appellant Taylor, but the record reveals the District Court's failure to take into account [her] financial resources and a failure to state on the record the manner and schedule of payments. The District Court's sentencing orders are also silent on these matters, but for the amount of restitution ordered and that restitution is to be made immediately.

It was plain error, therefore, for the District Court to order restitution without taking into account ... Taylor's financial resources and without stating, on the record, the manner, method and schedule of payments. We will, therefore, vacate the District Court's order[ ] of restitution ... and remand ... to the District Court so that it may specify the amount of restitution and the method, manner and schedule of payments, after taking into account the financial resources of ... Appellant.

⬛ *United States v. Crim*, 451 F. App'x 196, 210 (3d Cir. 2011).[3]

3    The opinion is captioned *United States v. Crim* because it also addressed the appeal of Taylor's co-defendant, John Michael Crim.

On November 5, 2012, in response to the Third Circuit's remand, the Court held a hearing to determine the manner and method of payments for Taylor's restitution based on her ability to pay. At the hearing, the government advocated for the Court to reinstate restitution in the amount of $3,300,000.00 and argued that the Court should only require Taylor to pay $100 per year towards her restitution based on her ability to pay. In doing so, the government pointed out that if it wished to increase Taylor's payment amount post-incarceration it could always "take it back up with your honor." Hr'g 11/15/12. Because the government hadn't provided any evidence to support a payment plan of more than $100 per year, the Court held that "payment of restitution is $100 per year until further order of the Court." Hr'g 11/15/12. The Court also noted that if the government "wishes to have

that amount increased [it] will have to file an appropriate petition and [it] will also have to file appropriate evidence ... that an adjustment would be required." Hr'g 11/15/12.

The Court memorialized Taylor's corrected restitution sentence in an amended criminal judgment. In the amended judgment, the Court again ordered Taylor to pay joint and several restitution in the amount of $3,300,000 and indicated: "Payment to begin immediately," and "The defendant shall make payments of $100.00 a year towards her restitution." Am. J. 5, ECF No. 912. Taylor appealed the amended restitution order. On January 16, 2014, the Third Circuit affirmed the Court's restitution order. *See United States v. Taylor*, 550 F. App'x 135 (3d Cir. 2014).

**\*3** In October 2017, the government requested and received financial documents from Taylor in order to verify Taylor's financial resources and ability to pay restitution. Def.'s Letter Mot. Ex. A; Gov't Resp. 3. Based on its reviews of the information, the government determined that Taylor was able to pay $25 per month towards her restitution. Def.'s Letter Mot. Ex. B; Gov't Resp. 3. Accordingly, in February 2018, the government presented Taylor with a written payment agreement for her to sign that would modify her restitution payment from $100 per year to $25 per month. Def.'s Letter Mot. Ex. B; Gov't Resp. 3. Taylor did not oppose the modification, but she requested that the government draft an order that included the new monthly payment amount for the Court to approve. Def.'s Letter Mot. Ex. C; Gov't Resp. 3. The government never submitted the proposed modification of Taylor's restitution payment schedule to the Court for approval and Taylor's restitution payment amount remained $100 per year.[4] Gov't Resp. 3.

4    Until the filing of Taylor's pending motion, the Court was unaware of everything that transpired between the Government and Taylor in 2017 and 2018. Thus, the Court did not know that both parties were in agreement that Taylor was financially able to pay more towards her restitution, because the Government never moved to modify Taylor's restitution payment plan.

In November 2019, Taylor became eligible to receive Social Security benefits. Prior to becoming eligible for social security, the United States Department of Justice ("DOJ") had referred Taylor's restitution judgment to the United States Department of Treasury ("Treasury Department") for the

purpose of collecting her debt through the Treasury Offset Program ("TOP"). [5]

[5]    On October 30, 2015, the DOJ sent Taylor an Administrative Offset Notice, informing Taylor that the DOJ intended to refer her restitution judgment to the Treasury Department for the purpose of collecting her debt through TOP. Gov't Surreply Ex. A, ECF No. 1082-1. The notice explained to Taylor that under TOP, "the Department of Treasury will reduce or withhold any of your eligible Federal payments ... by the amount of your debt. This 'offset' process is authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996, and the Internal Revenue Code." *Id.* On March 19, 2016, Taylor's restitution judgment was formally added to TOP.

TOP is a federal program authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996, which permits the Treasury Department to collect delinquent debts owed to federal agencies. *See* 31 U.S.C. § 3716. Under TOP "Congress has subjected to offset all 'funds payable by the United States,' § 3701(a)(1), to an individual who owes certain delinquent federal debts." *Astrue v. Ratliff,* 560 U.S. 586, 589 (2010). The contours of TOP program have been described in the following terms:

"The practice of withholding federal payment in satisfaction of a debt is known as an administrative offset." *Reeves v. Astrue,* 526 F.3d 732, 738 n. 3 (11th Cir. 2008). The Debt Collection Improvement Act of 1982, 31 U.S.C. §§ 3701 *et seq.,* authorizes the Treasury Department "to collect non-tax debts by withholding funds paid out by other federal agencies." *Reeves,* 526 F.3d at 738 n. 3; *see* 31 U.S.C. § 3716(a); 31 C.F.R. § 285.5. Pursuant to the TOP, any federal agency with a claim against the debtor, after notifying the debtor that the debt is subject to administrative offset and providing an opportunity to dispute the debt or make arrangements to pay it, may collect the debt by administrative offset. *See* 31 U.S.C. § 3716(a), (c)(6). In order to do so, the creditor agency must certify to Treasury that the debt is eligible for collection by offset and that all due process protections have been met. *See* 31 C.F.R. § 285.5(d)(3)(ii), (d)

(6). If properly certified, the Treasury Department must administratively offset the debt. *See* 31 U.S.C. § 3716(c)(1)(A).

**\*4** *Cleveland v. United States,* No. 3:13-CV-281, 2020 WL 3976940, at *2 (M.D. Pa. July 14, 2020) (quoting *Johnson v. U.S. Dep't of Treasury,* 300 F. App'x 860, 862 (11th Cir. 2008) (footnotes omitted)). Under TOP, Social Security benefits are eligible for offset pursuant to the Debt Collection Improvement Act. [6] *Lockhart v. United States,* 546 U.S. 142, 145 (2005); *see also* 31 U.S.C. § 3716(c)(3)(A)(i).

[6]    An offset to a person's Social Security benefits, however, cannot exceed 15% of the monthly covered benefit payment. 31 C.F.R. § 285.4(e).

Because Taylor's restitution judgment was enrolled in TOP, the Treasury Department automatically deducted fifteen percent (approximately $235 per month) of Taylor's monthly Social Security benefits and applied it to her restitution. Taylor continues to comply with the Court's $100 per year restitution payment plan. Thus, on top of the $100 per year that Taylor pays toward restitution, fifteen percent of Taylor's Social Security benefits are automatically applied to her restitution judgment. [7]

[7]    The Government notes that "Taylor's restitution judgment currently is not enrolled in TOP to offset her payments. The government will not enroll the debt in TOP pending resolution of this matter." Gov't Resp. Def.'s Sur-Reply Br. 6 n.1.

## II. DISCUSSION

Because Taylor has complied with this Court's order and timely made $100 restitution payments each year, Taylor contends the TOP offset is improper. Taylor objects to the Treasury Department's fifteen percent offset of her monthly Social Security benefits because it exceeds the $100 per year restitution amount that the Court ordered her to pay pursuant to the Mandatory Victims Restitution Act ("MVRA"). [8] In addition, she argues that TOP cannot apply to her because it only applies to delinquent debts and her debt is not delinquent because she has been making timely restitution payments. Notwithstanding that Taylor has made timely restitution payments in accordance with the Court's restitution payment plan, the government argues that Taylor's restitution debt is subject to TOP offset because she has not paid the entire

United States v. Taylor, Slip Copy (2021)

128 A.F.T.R.2d 2021-5280

$3,300,000.00 owed for restitution.[9] In the government's view, the Court's establishment of a payment plan for restitution pursuant to the MVRA does not preclude the government from undertaking a collection action against Taylor.

[8]   In addition, Taylor argues that the offset of her Social Security benefits violates the *Ex Post Facto* Clause of the United States Constitution. Taylor bases her argument on the mistaken belief that the IRS sought to offset her benefits pursuant to the Firearms Excise Tax Improvement Act of 2010 —a statute that did not become effective until August 16, 2010, almost two years after Taylor was sentenced. However, the IRS did not seek to assess and collect Taylor's restitution. Rather, the DOJ sought the offset of Taylor's Social Security benefits pursuant to the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996, which enables the Treasury Department to collect delinquent debts owed to federal agencies. *See* 31 U.S.C. § 3716(c). Thus, Taylor's offset does not violate the *Ex Post Facto* Clause of the United States Constitution.

Taylor also objects to the Treasury Department's offset of her Social Security benefits on the basis that the offset is a financial hardship. Because the offset violates the Court's restitution order it is unnecessary to reach this argument.

[9]   The government also argues that Taylor cannot challenge the offset under TOP because she has failed to exhaust her administrative remedies, and even if a judicial remedy is permissible, it would require Taylor to bring a separate civil suit rather than filing a motion before the sentencing court.

In *United States v. Hughes*, 813 F.3d 1007 (D.C. Cir. 2016), the Court of Appeals for the District of Columbia appropriately rejected the same arguments by the government under very similar circumstances. As in *Hughes*, Taylor did not fail to exhaust administrative remedies because there were no administrative remedies available to Taylor after the government began applying the offset to her benefits, and "even assuming an available administrative remedy, § 10(c) of the Administrative Procedure Act, 5 U.S.C. §

704, imposes no prerequisite of administrative exhaustion unless it is 'expressly required by statute or agency rule.' The government points to no statute or rule expressly imposing any such requirement." *Hughes*, 813 F.3d at 1010 (D.C. Cir. 2016) (quoting *Darby v. Cisneros*, 509 U.S. 137, 143 (1993)).

Additionally, Taylor's motion was properly brought before this Court because it sentenced Taylor. As explained by the *Hughes* court:

At least under these circumstances, where agency action threatens to thwart the proper execution of the collection of restitution ordered by a district court criminal sentence, and where the Department of Justice's purported readings of the sentence have triggered the actions of Treasury (the overseer of TOP), ... it is hard to see why a motion in the sentencing court should not be an "applicable form of legal action." Indeed, federal courts already have the authority to issue mandamus "in aid of their ... jurisdictions," 28 U.S.C. § 1651(a), an authority that includes power "to issue such commands under [§ 1651] as may be necessary or appropriate to effectuate and prevent the frustration of orders [they have] previously issued," *United States v. New York Telephone Company*, 434 U.S. 159, 172 (1977). The power reaches even "persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice" and "who have not taken any affirmative action to hinder justice."

*Id.* at 174.

*Id.*

**\*5** The MVRA applies to Taylor's conviction and provides that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). It further directs that "the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." *Id.* § 3664(f)(2). "[T]he plain language of section 3664(f)—stating that 'the court shall' order restitution and specify the manner

United States v. Taylor, Slip Copy (2021)

128 A.F.T.R.2d 2021-5280

and schedule of payments—means that ordering restitution is a judicial function that cannot be delegated, in whole or in part." ⚑ *United States v. Corley*, 500 F.3d 210, 225 (3d Cir. 2007), *vacated and remanded on other grounds*, ⚑ 556 U.S. 303 (2009); *see also* ⚑ *United States v. Lessner*, 498 F.3d 185, 201 (3d Cir. 2007) ("The district court's obligation to comply with § 3664(f)(2) may not be delegated to the probation office."). Thus, it is the court alone and not the government who possesses the statutory authority to order restitution and establish a payment plan for restitution. ⚑ *United States v. Martinez*, 812 F.3d 1200, 1206 (10th Cir. 2015) ("[T]he statutory scheme directs the district court, not the government, to direct how and when the defendant is to satisfy a restitution order.").

When determining a schedule of payments, the MVRA directs the court to consider "the financial resources," "projected earnings," and "financial obligations" of the defendant. 18 U.S.C. § 3664(f)(2)(A)-(C). It is plain error for a court to order full restitution without establishing on the record the manner and schedule of payments after taking into consideration the defendant's financial resources. ⚑ *Lessner*, 498 F.3d at 201; ⚑ *Crim*, 451 F. App'x at 210.

"When a restitution order specifies an installment plan, unless there is language directing that the funds are also immediately due, the government cannot attempt to enforce the judgment beyond its plain terms absent a modification of the restitution order or default on the payment plan." ⚑ *United States v. Hughes*, 914 F.3d 947, 949 (5th Cir. 2019), *as revised* (Feb. 1, 2019), *as revised* (Feb. 14, 2019). Courts that have ordered a defendant to pay restitution according to a payment plan and have not ordered the entire amount of restitution to be paid immediately, have routinely held that the government may not collect on the full amount of restitution owed when a defendant is in full compliance with the payment plan. [10] *See, e.g.*, ⚑ *Hughes*, 914 F.3d at 949 (rejecting the government's attempt to collect the full restitution amount because it "conflicts with the installment-based directive in [the defendant's] original judgment"); ⚑ *United States v. Hughes*, 813 F.3d 1007, 1010-11 (D.C. Cir. 2016) (rejecting the government's attempt to use TOP offset to collect on the restitution judgment because the defendant had complied with the court's restitution payment plan); ⚑ *Martinez*, 812 F.3d at 1207 (rejecting the government's attempt to collect on the

restitution judgment by garnishing the retirement accounts of the defendant because the defendant had complied with the court's restitution payment plan). This is because "[t]he government has statutory authority to enforce only the terms of a restitution order, not to take an enforcement action that would exceed a restitution order's payment terms." [11] ⚑ *Martinez*, 812 F.3d at 1207.

[10]    The government cites many cases to support its contention that it has the authority to enroll Taylor's restitution obligation in TOP. These cases, however, focus on legally distinguishable restitution orders that either (1) made the full amount of restitution due immediately, regardless of backup payment plan; (2) implemented a payment plan that only set a minimum amount that had to be paid with each installment but did not set a maximum amount, potentially implying that restitution was due immediately; or (3) explicitly permitted collection beyond the amount specified in the payment plan. *See, e.g., United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016) (affirming the district court's issuance of a writ of garnishment to collect on a restitution judgment that provided for payment in full immediately and as backup required the defendant to pay a minimum of 10% percent of his monthly income while on supervised release); *Greene v. United States*, 124 Fed. Cl. 636, 644 (Fed. Cl. 2015) (upholding IRS offset of tax overpayment to collect on criminal fine where the "the judgment imposing the fine provided that it was 'due in full immediately,' and that if it was not paid immediately, it was 'payable on a schedule' "); ⚑ *United States v. Shusterman*, 331 F. App'x 994, 997 (3d Cir. 2009) (affirming the district court's issuance of a writ of garnishment to collect on a restitution judgment that provided "in the event the entire restitution is not paid before the commencement of supervision, [the defendant] shall pay monthly installments of not less than $250.00"). "Courts have almost uniformly recognized a 'crucial distinction' between cases like *Martinez*, in which the court orders the defendant to pay only through a payment schedule with no requirement of immediate payment in full, and cases like ... *Shusterman*, in which the judgment specifies that the amount owed is due in full on the date of judgment, regardless of

United States v. Taylor, Slip Copy (2021)

128 A.F.T.R.2d 2021-5280

whether the judgment includes a back-up schedule of payments to cover any unpaid amounts." *United States v. Williams*, 898 F.3d 1052, 1055 (10th Cir. 2018). Given this "crucial distinction," the cases cited by the government do nothing to buttress its argument that it may undertake a collection action against Taylor for her failure to pay the full amount of restitution owed when the Court issued an installment-based restitution order that Taylor has complied with and did not require Taylor to immediately pay in full.

11      While "[a]n order of restitution may be enforced by the United States ... by all ... available and reasonable means," 18 U.S.C. § 3664(m)(1)(A), the government may not alter the restitution order.

*6   In this case, the Third Circuit vacated Taylor's original restitution judgment because this Court ordered Taylor to pay the full amount of restitution without considering Taylor's financial resources and without stating the manner and schedule of payments. *Crim*, 451 F. App'x at 210. Following the Third Circuit's instructions, the Court determined at resentencing that Taylor's financial resources only enabled her to pay $100 per year and that she should begin making her payments immediately. Despite the Third Circuit's explicit directive that this Court was statutorily obligated to consider Taylor's financial resources when fashioning her restitution sentence, the government now seeks to use TOP to greatly increase the amount Taylor must pay toward her restitution without any consideration of her ability to pay. The government, however, "[can]not usurp the district court's role by enforcing payments not yet due under the court-ordered payment schedule." *Martinez*, 812 F.3d at 1206. Not only does the government's use of TOP conflict with the terms of the restitution order, it also conflicts with the statutory scheme. *See id.* at 1207.

"[U]nlike a civil judgment, the restitution order is the product of a 'specific and detailed [statutory] scheme addressing the issuance ... of restitution orders arising out of criminal prosecutions.' " *Id.* at 1204 (quoting *United States v. Wyss*, 744 F.3d 1214, 1217 (10th Cir. 2014)). Section 3572(d) states that "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1). This subsection

provides that the full payment of restitution is not due immediately if a court establishes a payment plan for restitution. *See Martinez*, 812 F.3d at 1205. Thus, "a defendant subject to an installment-based restitution order need only make payments at the intervals and in the amounts specified by the order." *Id.* Section 3572 also explicitly defines when a payment of restitution is delinquent or in default. *See* 18 U.S.C. § 3572(h)-(i). A "payment of restitution is delinquent if a payment is more than 30 days late." *Id.* § 3572(h). A "payment of restitution is in default if a payment is delinquent for more than 90 days. Notwithstanding any installment schedule, when a fine or payment of restitution is in default, the entire amount of the fine or restitution is due within 30 days after notification of the default." *Id.* § 3572(i). These provisions "would be unnecessary, even meaningless, if the total restitution amount were already owed in full under an installment-based restitution order." *Martinez*, 812 F.3d at 1205. It is evident from the structure and language of § 3572 that under an installment-based restitution order, the restitution debt only becomes delinquent when a defendant's installment payment is more than 30 days late. [12]

12      The treasury regulation that governs administrative offsets pursuant to 31 U.S.C. § 3716 further supports that an installment-based restitution debt does not become delinquent until after a defendant misses an installment payment. The treasury regulation provides: "Delinquent or past-due refers to the status of a debt and means a debt has not been paid by the date specified in the agency's initial written demand for payment, or applicable agreement or instrument (including a post-delinquency payment agreement), unless other payment arrangements satisfactory to the creditor agency have been made." 31 C.F.R. § 285.5(b). In this case, the applicable instrument —the restitution order—requires Taylor to pay $100 per year towards her restitution and does not require any additional payment. Because Taylor has timely paid her installment each year, her restitution debt is not delinquent. *See Hughes*, 813 F.3d at 1010-11 (finding TOP inapplicable to the defendant's restitution debt because debt was not delinquent under Treasury regulations given that the restitution order only required the defendant to "start paying money when the Blackhawk fine is resolved, and, in any case, would

only be delinquent if [the defendant] paid less than $50 per month").

**\*7** The Debt Collection Improvement Act provides: "Any Federal agency that is owed by a person a past due, legally enforceable nontax debt that is over 120 days delinquent ... shall notify the Secretary of the Treasury of all such nontax debts for purposes of administrative offset...." 31 U.S.C.A. § 3716(c)(6)(A). Thus, under TOP "Congress has subjected to offset all 'funds payable by the United States,' § 3701(a)(1), to an individual who owes certain *delinquent* federal debts." [13] *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010) (emphasis added).

[13]   The government relies on a Department of Justice ("DOJ") regulation to argue that Taylor's restitution debt is subject to collection under TOP because it is past due. The DOJ regulation provides: "Judgment debts remain past due until paid in full." 28 C.F.R. § 11.11(b). While it is true that "a sentence that imposes an order of restitution is a final judgment," 18 U.S.C. § 3664(o), the DOJ regulations is immaterial because Treasury cannot collect on any debt under TOP that is not delinquent.

The government seeks to collect on Taylor's restitution judgment because she has not paid her total amount owed in restitution—$3,300,000.00. The government advocated at resentencing, however, that Taylor should only pay $100 per year towards her restitution based on her ability to pay. Following the government's recommendation, the Court issued an installment-based restitution order that only required Taylor to pay $100 per year towards restitution. Because Taylor has timely made her restitution payments, her restitution debt is not delinquent, and the government cannot use TOP to collect on her debt.

Although the government may not use TOP to collect additional money from Taylor to apply towards her restitution obligation, it is not without recourse. A district court retains jurisdiction to adjust the method and manner of payment of a restitution order. 18 U.S.C. § 3664(k), (o). When a court receives notification of "any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution ..., the court may, on its own motion, or the motion of any party ... adjust the payment schedule, or require payment in full, as the interests of justice require." *Id.* § 3664(k).

Cognizant of the Court's ability to adjust Taylor's payment schedule, the government acknowledged at sentencing that if it wished to increase Taylor's payment amount it could always "take it back up with your honor." Hr'g 11/15/12. The Court confirmed that if the government "wishes to have that amount increased [it] will have to file an appropriate petition and [it] will also have to file appropriate evidence ... that an adjustment would be required." Hr'g 11/15/12. In October 2017, the government received financial information from Taylor that it believed established that Taylor had the ability to pay more towards her restitution. Accordingly, the government presented Taylor with a written payment agreement for her to sign that would modify her restitution payment from $100 per year to $25 per month. [14] In February 2018, Taylor informed the government that she did not oppose the proposed modification of her restitution order, but she requested that the government submit a modification order to the Court for approval. The government never submitted the proposed modification of Taylor's payment schedule to the Court for approval and Taylor's restitution installment plan remained $100 per year.

[14]   The Installment Payment Plan that the government sought to enter with Taylor not only increased Taylor's payment plan, it also required Taylor to "agree[ ] that, in addition to the payments due under this agreement, the United States Attorney shall refer the debt to the U.S. Department of Treasury for inclusion in the Treasury Offset Program." Def.'s Reply Ex. B.

**\*8** Although the government was aware of its ability to request modification of Taylor's restitution order payment plan, and even had the consent of Taylor to do so in 2018, the government chose not to move under § 3664(k) to seek such a modification from the Court. Instead, the government removed the Court from the decision by enrolling Taylor's restitution debt in TOP and deducting fifteen percent of Taylor's monthly social security benefits to apply it to her restitution. In effect, the government impermissibly increased Taylor's restitution payment plan without authorization from the Court in violation of the restitution order.

Though the government may believe that it is in the best position to determine whether Taylor should pay more towards her restitution, Congress vested this authority in the courts. In doing so, it mandated that a court must consider the defendant's economic circumstances in fashioning and

United States v. Taylor, Slip Copy (2021)
128 A.F.T.R.2d 2021-5280

modifying the manner and method of payment for a restitution order.

It makes sense that a court should consider a defendant's ability to pay. As the Senate Committee on the Judiciary recognized in considering the MVRA, "a significant number of defendants required to pay restitution under this act will be indigent at the time of sentencing ..., making it unlikely that they will be able to make significant payments on a restitution payment schedule." S. Rep. No. 104-179, at 21 (1995).

The "vast majority of criminal defendants are poor.... And approximately eighty percent of criminal defendants are sufficiently indigent to qualify for court-appointed counsel." Abby Shafroth et al., Nat'l Consumer L. Ctr., *Confronting Criminal Justice Debt: A Guide For Litigation* 5 (2016). Moreover, "people who have been incarcerated are significantly burdened by multiple types of debt." Annie Harper et al., *Debt, Incarceration, and Re-entry: a Scoping Review,* 46 Am. J. Crim. Just. 250, 268 (2021). A large portion of this debt stems from legal financial obligations incurred as a direct result of involvement in the criminal justice system, including restitution, criminal fines, court fees, incarceration charges, and fees for post-release supervision. *Id.* at 251. "For many, criminal justice debt can ... trigger a cascade of debilitating consequences...." Karin D. Martin et al., Nat'l Inst. of Just., U.S. Dep't of Just., *Shackled to Debt: Criminal Justice Financial Obligations and the Barriers to Re-Entry They Create,* New Thinking in Community Corrections, Jan. 2017, at 9. As formerly incarcerated individuals struggle to pay their legal financial obligations, they "experience economic hardship and financial strain, face challenges in finding employment and housing after release, are burdened by on-going, long-term indebtedness, and their family networks are also burdened, which causes tension in relationships." Harper, *supra,* at 268. Importantly, a major consequence of these financial burdens is their tendency to increase a person's risk of recidivism, particularly when the individual is unable to pay. Douglas N. Evans, *The Debt Penalty—Exposing the Financial Barriers to Offender*

*Reintegration,* Rsch. & Evaluation Ctr., John Jay College of Crim. Just., Aug. 2014, at 9; *see also* Martin, *supra,* at 9 ("For some formerly incarcerated individuals, these [legal financial obligations] ... motivate[e] further criminal involvement.").

Here, Taylor asserts that she became unemployed on March 21, 2020 because of COVID-19 and that her only source of income is her Social Security benefits. Def.'s Letter Mot. 3. A fifteen percent reduction in her Social Security benefits has caused Taylor "financial and emotional distress as [she] is not able to meet [her] financial obligations." *Id.* As Taylor aptly argues, "I have very poor credit and shouldn't have to go into debt to pay a debt, especially when I am not in arrears, had not defaulted, and consistently paid the amount ordered by this Court to be paid." *Id.* The Court agrees with Taylor's assessment and will grant her motion for relief. [15]

[15]    The Court makes no factual findings as to Taylor's ability to pay her restitution. The $100 yearly installment-based restitution order remains in force. Of course, the government is always free to seek a modification of Taylor's restitution payment plan pursuant to 18 U.S.C. § 3664(k).

### III. CONCLUSION

*9  I will grant Taylor's motion for relief and declare the collection of restitution pursuant to the offset of Taylor's Social Security benefits through TOP to be in contravention of the Court's restitution judgment. I will also order the government to return to Taylor all funds taken by the government by offset of Taylor's Social Security benefits. [16]

[16]    Additionally, I will order the government to provide Taylor with an accounting of restitution currently owed.

### All Citations

Slip Copy, 2021 WL 3051901, 128 A.F.T.R.2d 2021-5280

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

U.S. v. Weissenbach, Not Reported in F.Supp.2d (2010)

2010 WL 2246177
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court, W.D. North Carolina,
Charlotte Division.

UNITED STATES of America
v.
Mark WEISSENBACH.

Criminal No. 3:08CR172–1.
|
June 2, 2010.

**Attorneys and Law Firms**

David Alan Brown, Sr., U.S. Attorney's Office, Charlotte,
NC, for United States of America.

**ORDER**

FRANK D. WHITNEY, District Judge.

**\*1  THIS MATTER** is before the Court on Defendant's
*pro se* motion, submitted in the form of a letter to the Court
filed May 27, 2010, regarding his restitution. Specifically,
Defendant appears to be seeking relief from the United States'
collection activities regarding the restitution debt set forth in
the criminal judgment in this matter. For the reasons stated
below, the Court will deny Defendant's request.

**I. PROCEDURAL HISTORY**

The criminal judgment was entered in this matter on October
30, 2009. Defendant pleaded guilty to one count of tax
evasion related to unreported income of $609,364.52 for tax
years 2002 through 2006. During these years, Defendant
reported himself as disabled in his tax returns, but was in
fact working as a bookie for a company based in Costa Rica,
earning between $66,000 and $207,000 annually. Because
Defendant was sentenced after April 24, 1996, the Mandatory
Victim Restitution Act (MVRA) applies. *See* 18 U.S.C. §
3663A and 3664.

In accordance with the MVRA, Defendant was ordered to
pay restitution to the Internal Revenue Service in the amount
of $127,348.09, representing his unpaid taxes, as well as
an assessment of $100.00. Defendant's sentence included
no active prison sentence and Defendant was ordered to
pay $50.00 per month toward his debt. According to the
records maintained by the Clerk of Court, Defendant has
paid the $100.00 assessment and $48,879.35 of the restitution
obligation. $78,568.74 remains outstanding, subject to any
payments that have been collected recently, but which have
not yet been entered into the relevant accounting system.

According to the response submitted by the United States on
May 27, 2010, the government entered Defendant's obligation
into the Treasury Offset Program ("TOP") database so that
any funds paid by the government, such as tax refunds or
Social Security payments, could be used in whole or in part
to pay Defendant's remaining restitution debt. It appears from
the parties' filings that Defendant's TOP offset from his Social
Security benefits is $271.35 per month, which represents
$255.35 in restitution paid to the Clerk's Office, as well as a
$16.00 processing fee deducted by Treasury for each payment
collected.

Defendant's letter to the Court represented Defendant's
financial condition as being difficult, due to personal health
issues and expenses related to his criminal supervision.
Other than the letter to the Court, Defendant submitted
no documentation or legal authority in support of his
request. The government provided documentation regarding
assets available to Defendant, including annual income of
approximately $29,000 annually, vehicles, a boat, and an
interest in a 3,300 square foot residence which is jointly titled
with his girlfriend, who has her own sources of income.

**II. ANALYSIS**

While Defendant requests relief from the offset of his Social
Security benefits, he has provided the Court with no authority
or evidence to support such a request. As provided in the
government's response, Social Security payments are subject
to TOP offset pursuant to the Debt Collection Improvement
Act of 1996. *See* 31 U.S.C. § 3701 *et seq.* Such offsets are
not unlimited, but it appears that the government's offset in
this matter complies with the statutory requirements in that it
does not exceed 15% of Defendant's benefit. *See* 31 C.F.R.
285.4(e).

U.S. v. Weissenbach, Not Reported in F.Supp.2d (2010)

**\*2** Nor does there appear to be authority for the Court to prohibit the government from offsetting Defendant's Social Security benefit so long as the statutory requirements are met, even assuming he was suffering the financial hardships claimed in his letter. While the Court does have the authority to adjust payment schedules pursuant to 18 U.S.C. § 3664(k), TOP offsets are not part of any court payment schedule, but are instead part of the government's collection activities. There is no statute that prohibits the United States from conducting such collection activity once the restitution order is imposed, even where there is no payment default or where the Court has established a payment schedule. 18 U.S.C. § 3613 provides that:

> The United States may enforce a judgment imposing a fine [or restitution [1]] in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined ... [except for certain exemptions, none of which are relevant in this matter.]

[1]   18 U.S.C. § 3613(f) provides that "all provisions of this section are available to the United States for the enforcement of an order of restitution."

"Enforcement of restitution may begin immediately after an entry of judgment arises on a defendant's property" and restitution is generally to be paid immediately unless the judge orders deferral. *United States v. Hanhardt*, 2004 WL 3104827, \*1 (N.D.Ill.)(citing 18 U.S.C. § 3613(c), which provides the lien in the favor of the United States "arises on the entry of judgment," and *United States v. Delacruz*, 2004 U.S.App. LEXIS 18900, \*3).

Even where the judge *has* deferred payment, the United States still has the right to immediate restitution.

While a schedule of $150 per month was put in place in the event restitution was not paid immediately, the existence of this schedule does not mean that the government is precluded from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied. Court-imposed payment schedules are merely one means available to enforce a restitution judgment.

*United States v. James,* 312 F.Supp.2d 802, 806–07 (E.D.Va.2004). *See also* *United States v. Hanhardt,* 2004 WL 3104827, \*1 (N.D.Ill.)(following the reasoning of the James court). These decisions are consistent with the statutory requirement for prompt payment of restitution to victims set forth in 18 U.S.C. § 3664A(f).

Although Defendant claims financial hardship, this is not an appropriate line of inquiry in this matter, statutorily or otherwise. Congress duly promulgated a statutory system that provides for a limit to the amount that may be offset. In this case, the government is limited to collecting 15% of Defendant's Social Security benefit. This percentage is part of a calculation that exempts the amounts calculated to be reasonably necessary to meet a person's individual monthly living expenses. No inquiry into Defendant's individual needs is provided for by statute. Even if Defendant's financial circumstances were a permissible topic for judicial review of the government's collection activities, it appears from the submissions to the Court that Defendant is suffering no financial hardship. As such, the Court also declines to alter the minimum monthly payment of $50.00 as set forth in the criminal judgment absent the submission of credible evidence from Defendant.

### III. ORDER

**\*3** IT IS, THEREFORE, ORDERED that Defendant's motion to reduce the TOP offset of his Social Security benefit is **DENIED.**

U.S. v. Weissenbach, Not Reported in F.Supp.2d (2010)

**IT IS FURTHER ORDERED** that Defendant's monthly payment amount as set forth in the criminal judgment shall not be reduced absent the submission of credible evidence of need as set forth in 18 U.S.C. §§ 3663A and 3664.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2246177

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 832603
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Andrew STACY, Plaintiff,
v.
UNITED STATES of America, Defendant.

Case No. 19 C 301
|
Signed 03/21/2022

### Attorneys and Law Firms

Kenneth A. Nazarian, James A. Karamanis, Barney & Karamanis LLP, Chicago, IL, for Plaintiff.

AUSA, Craig Arthur Oswald, David Harold DeCelles, Sarah Fattahi Terman, United States Attorney's Office, Valerie Rebecca Raedy, United States District Court for the Northern District of IL, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

**\*1** In December 2014, Andrew Stacy pled guilty to one count of bank fraud and was ordered to pay restitution to the victims of the crime in the amount of $1,495,689.60. The United States registered the judgment with the Treasury Offset Program, a Department of Treasury program that helps collect delinquent debts owed to federal agencies. Under the program, the U.S. Treasury withholds funds that would otherwise be paid to an individual by a federal agency and instead applies the funds as a credit to the individual's federal debts.

Following his two-year incarceration, Stacy sued the United States under the Federal Tort Claims Act (FTCA), alleging that Bureau of Prisons employees were negligent in failing to timely approve and perform needed medical treatment. The parties settled the case for $70,000. During settlement negotiations, the United States indicated that the settlement was subject to administrative offset and that, instead of paying it out to Stacy, it would apply the proceeds to his criminal restitution debts. Evidently this was not known to either side's counsel throughout the litigation until a settlement had been

concluded. This is truly unfortunate, as earlier awareness of this important information might have saved a lot of the parties' time and effort.

Stacy has filed a motion asking the Court to find that his FTCA suit settlement is not subject to an administrative offset. For the reasons stated below, the Court denies Stacy's motion.

### Discussion

The Court first addresses its jurisdiction to rule on this issue. A party may sue the United States only in cases where Congress has waived its sovereign immunity. The FTCA provides one such waiver, allowing the United States to be held liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This waiver is what allowed Stacy to bring his tort suit against the government. But, with respect to his current motion, the government contends that the FTCA does not authorize suits against "the United States to enjoin an administrative offset" and thus that the Court lacks jurisdiction to address Stacy's request. Resp. at 3.

The Court disagrees. Section 1346(c) states that the jurisdiction conferred by the FTCA "includes jurisdiction of *any* set-off, counterclaim, or other claim or demand *whatever* on the part of the United States against any plaintiff commencing an action under" the FTCA. 28 U.S.C. § 1346(c) (emphasis added). This section, contrary to the government's contention, is written broadly and includes all cases, like this case, where the United States claims a set-off against an FTCA plaintiff. *See Johnson v. United States*, No. 13 C 2839, 2018 WL 5919475, at *1–2 (N.D. Ill. Nov. 7, 2018).

Having determined that it has jurisdiction to address Stacy's motion, the Court proceeds to do so. Under 31 U.S.C. § 3728(a), the Treasury "shall withhold paying that part of a judgment against the United States Government presented to the [Treasury] that is equal to a debt the plaintiff owes the Government." Additionally, sections 3711 and 3716 state that, "with respect to claims of the United States for money or property arising out of the activities of, or referred to, the agency," "the head of an executive, judicial, or legislative

agency may collect the claim by administrative offset." 31 U.S.C. §§ 3711(a), 3716(a). These statutory provisions suggest that the government has the authority to assert an offset against a party who owes criminal restitution.

**\*2** Stacy argues that these statutory provisions do not apply for several reasons. First, Stacy argues that his criminal restitution is not a "debt that [he] owes the Government"; rather, he contends, he owes restitution to the victims of his crime. But Stacy does not cite any authority for his contention, and cases from other circuits undermine his argument. For example, the Eighth Circuit has held that "[a]n order of restitution ... is based on the victim's losses, but it is an obligation owed to the government." *United States v. Whitbeck*, 869 F.3d 618, 620 (8th Cir. 2017). Similarly, an Eastern District of Arkansas court, in rejecting the very argument that Stacy makes, found that the plaintiff's restitution debt was owed to the government. *Simpson-El v. United States*, No. 2:12-cv-00004-SWW, 2015 U.S. Dist. LEXIS 160789, at \*4 (E.D. Ark. Dec. 1, 2015). Although restitution is for the benefit of the crime victims, it is payable to the government, which collects the payment and then distributes it to the victims. For these reasons, the Court finds that Stacy's restitution is a debt owed to the government.

Second, Stacy argues that the sections do not apply because he is current on his restitution payments. He compares his situation to that of the plaintiff in *Simpson-El*. In that case, the court found that the plaintiff's debt was not past due, noting that:

> The restitution schedule provided for "[p]ayment of not less than 10% of the funds deposited each month into the inmate's trust fund account and monthly installments of not less than 5% of the defendant's monthly gross household income over a period of 3 years, to commence 30 days after release from imprisonment to a term of supervision."

*Id.* at \*6. Because the plaintiff was current on his payments, the court concluded that administrative offset was not appropriate. In a similar case, the D.C. Circuit held that an administrative offset was not available where the plaintiff was not delinquent in her restitution obligations. *United States v. Hughes*, 813 F.3d 1007, 1011 (D.C. Cir. 2016).

In contrast, the government argues that this case is like *Johnson*, in which the court found that the plaintiff's restitution was due immediately and thus the debt was delinquent. *Johnson*, 2018 WL 5919475, at \*3. Most

significantly with respect to the question before the Court in Stacy's case, the court in *Johnson* relied upon the fact that the restitution judgment stated that the amounts were "due immediately." *Id.* For these reasons, the court held that the plaintiff's settlement was subject to offset by the government.

Stacy's case is similar to *Johnson*. The judge in his criminal case entered a judgment stating that that his monetary penalties were "due immediately." Dkt. no. 90-1 at 7. The court reiterated this in the "special instructions" section of the order, stating that "[t]he financial obligations are due immediately from any non-exempt assets." *Id.* Although the court provided Stacy with a payment plan, that simply provided a schedule for payment in the event that he could not make the entire payment in full. This is clear from the court's use of the phrases "Otherwise" and "Any balance remaining upon release...." *See id.* Nothing in the court's language suggests that the payment plan superseded his obligation to pay restitution "immediately." *See id.*

Next, Stacy contends that, under the government's interpretation, "every single inmate [who owes restitution] would be deprived of the right to an attorney to represent them in their cases" because any potential settlement or judgment from such cases would be used to pay down the restitution amount, instead of attorney's fees or court costs. Mem. at 4. Stacy further argues that this lack of recourse would allow prison staff to "mistreat, abuse, neglect, and otherwise ignore" inmates with restitution judgments "without regard for the repercussions." *Id.* This is a serious and plausible argument. Unfortunately, however, the Court lacks the authority to ignore or rewrite the statute to take Stacy's point into account. If a statute represents bad policy, it is up to Congress, not the courts, to change it. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012). The Court also notes that a federal prisoner in this situation likely has an available remedy for injunctive relief to prevent ongoing violations of his constitutional rights. *See McCarty v. Pitzer*, No. 96-2301, 1997 WL 225869, at \*3 (7th Cir. Apr. 30, 1997) (unpublished).

**\*3** Lastly, Stacy argues that the statutes cited by the government do not apply to cases involving criminal restitution because "[c]riminal restitution is governed by 18 U.S.C. § 3664, which allows the Court, and not any administrative agency, to control criminal restitution." Reply at 3. Stacy contends that the government's interpretation gives the Treasury the power to "amend, alter, compromise, or discharge the restitution debt owed by Plaintiff," which, he

contends, is in direct violation of 18 U.S.C. § 3664(c). *Id.* at 4. But 18 U.S.C. § 3664 does not prohibit the government from collecting criminal restitution through administrative offset. In fact, the provision states that "[a]n order of restitution may be enforced by the United States ... by *all other available and reasonable means.*" 18 U.S.C. § 3664(m)(1)(A) (emphasis added).

For these reasons, the Court finds that Stacy's settlement is subject to administrative offset.

Even if the settlement award is subject to an offset, Stacy argues, his attorneys should still be paid under the principles of *quantum meruit. Quantum meruit* "is based on the implied promise of a recipient of services to pay for those services that are of value to it and lies where the recipient would be unjustly enriched if it were able to retain the services without paying for them." *Restore Constr. Co. v. Bd. of Educ. of Proviso Twp. High Schs. Dist. 209,* 2020 IL 125133, ¶ 28, 164 N.E.3d 1238, 1245. Stacy's argument is that his lawyers' services provided a benefit in the form of a settlement that satisfies of part of his restitution and that the government should not get this benefit for free. The problem, however, is that the government made no implied promise to Stacy's attorneys to pay for their services. The Court also notes that Stacy himself benefits in the settlement—though perhaps not in the way he hoped—by getting a credit against his restitution obligation.

Lastly, the Court addresses whether Illinois' common fund doctrine mandates payment of attorney's fees in this case. (Stacy did not make this argument, but the Court considers it for purposes of completeness.) Under this doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Wendling v. S. Ill. Hosp. Servs.,* 242 Ill. 2d 261, 265, 950 N.E.2d 646, 648 (2011) (citation and internal quotation marks omitted). The theory here—similar to Stacy's *quantum meruit* argument—is that the government (and the crime victims) obtained via the settlement a fund available for payment of Stacy's restitution.

The Illinois common fund doctrine is most commonly applied "to protect[ ] attorneys dealing with nonparticipating insurance companies." *Wajnberg v. Wunglueck,* 2011 IL App (2d) 110190, ¶ 18, 963 N.E.2d 1077, 684. For example, Illinois courts have held that the doctrine applies in insurance subrogation cases where an insured plaintiff sues the tortfeasor for damages and receives a judgment in which the plaintiff's insurance company shares due to its earlier payment of the plaintiff's medical expenses. *Id.* The insurance company must contribute to the attorney's fees when: (1) "the fund was created as a result of legal services the attorney performed"; (2) "the subrogee (e.g., an insurance company) did not participate in the creation of the fund"; and (3) "the subrogee benefited or will benefit from the fund's creation." *Id.*

But cases involving subrogor-subrogee relationships are different from cases like the one before the Court. In the situation just described, the plaintiff is "obligated to pay the subrogee only in the event and to the extent that any net recovery is made." *Powell v. Inghram,* 117 Ill. App. 3d 895, 899, 453 N.E.2d 1163, 1166 (1983). Because the insurance company would have received nothing if not for the attorney's services, the recovery amounts to a benefit to the insurance company—one that the insurance company ought to help pay for. In Stacy's case, however, he is a debtor who is "obligated to pay a debt out of any resources available," regardless of whether he recovers anything in a subsequent lawsuit. *Id.* Thus the creditor (here, the government) does not benefit from the services of the obligor's attorney in the same way as a subrogee, because the creditor would have been entitled to payment regardless. For this reason, the common fund doctrine does not apply in creditor-debtor cases like this one. *Wendling,* 242 Ill. 2d at 265, 950 N.E.2d at 648 ("Illinois courts have never applied the common fund doctrine to a creditor-debtor relationship....").

## Conclusion

**\*4** For the foregoing reasons, the Court denies the plaintiff's motion to challenge an administrative offset [dkt. no. 90]. The Court assumes that this resolves the last remaining issue in the case and that the case may now be dismissed with prejudice pursuant to the previously agreed-upon settlement. The parties are directed to file a status report by March 24, 2022 advising whether this is so, and if not, what remains to be done to bring the case to a conclusion.

**All Citations**

Slip Copy, 2022 WL 832603

Stacy v. United States, Slip Copy (2022)

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.